UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
The Matter of the Application of the

TRUSTEES OF THE BUILDING TRADES ANNUITY
FUND, EDUCATION FUND, WELFARE FUND and
the UNITED SERVICE WORKERS SECURITY FUND,

                   Plaintiffs,                              **REPORT AND
RECOMMENDATION**

           - against -                            CV 09-3812 (ADS) (AKT)

PROFESSIONAL PLUMBING OF STATEN ISLAND
CORP.

                    Defendant.
----------------------------------------------------------------------X

A. KATHLEEN TOMLINSON, Magistrate Judge:

**I.    PRELIMINARY STATEMENT**

Following the notation of default and entry of a default judgment against Professional Plumbing of Staten Island Corp. ("Defendant"), District Judge Spatt referred this matter to me for an inquest as to damages, reasonable attorneys fees, and costs, if appropriate . *See* DE 9.

Plaintiffs are Trustees of the Building Trades Annuity Fund, Education Fund, Welfare Fund and United Services Workers Security Fund (collectively, "Plaintiffs" or the "Funds") which brought this petition pursuant to Section 9 of the United States Arbitration Act, codified as 9 U.S.C. § 9 and Section 301(a) of the Labor Management Relations Act ("LMRA"), codified as 29 U.S.C. § 185(a) seeking an Order and Judgment confirming an arbitration award. The underlying Arbitration found in favor of Plaintiffs based upon Defendant's failure to comply with its statutory and contractual obligations to Plaintiffs arising out of a Collective Bargaining Agreement ("CBA") and subsequent Assumption Agreement (collectively, the "Agreement")

entered into by the United Plumbers & Fitters of America, Local 101 (the "Union") and the Defendant. The CBA covers the time period from December 1, 2005 through November 30, 2008 and the Assumption Agreement covers the period April 1, 2008 through March 30, 2011.

Plaintiffs seek an Order confirming the arbitration award which granted Plaintiffs unpaid fringe benefit contributions for the period May 1, 2008 through June 1, 2009, as well as interest, liquidated damages, costs and attorneys' fees. According to Plaintiffs' unchallenged allegations, the full amount owed, including principal contributions, interest, liquidated damages, costs and attorneys' fees, is $175,567.88. *See* Aff. for Judgment by Default by Danielle M. Carney ("Carney Default Aff."), ¶ 7.

Based upon the information submitted by Plaintiffs and for the reasons stated below, the Court finds that Plaintiffs are entitled to the relief requested in their motion to the extent set forth in this Order. I respectfully recommend to Judge Spatt that damages be awarded to Plaintiffs as follows: (1) $134,867.20 for unpaid contributions; (2) $7,876.24 in interest; (3) $26,973.44 in liquidated damages; (4) $2,840 in attorneys' fees; and (5) $2,530 in costs, which includes the arbitrator's fee, filing fee and service fees, for a total sum of $ 175,086.88.

## II. BACKGROUND

The Funds are jointly administered multi-employer, labor-management trust funds as defined by Sections 3(21)(A) and 502(a)(3) of ERISA, codified as 29 U.S.C. §§1002(21)(A) and 1132(a)(3). *See* Pet. ¶ 3. The Funds and the Defendant were parties to an Agreement whereby the Defendant was obligated to (1) submit contribution reports setting forth the amount of contributions due pursuant to the rate schedules set forth in the Agreement for all work performed by Defendant's covered employees, and (2) remit such contributions. *Id.,* ¶ 5.

The Defendant violated the Agreement by failing to remit proper benefit contributions, and Plaintiffs submitted the dispute to arbitration. *Id.,* ¶¶ 5-6.

Pursuant to the CBA, the Defendant agreed to submit to binding arbitration in the event a dispute arose over contributions owed to the Funds. *Id.,* Ex. B. On June 10, 2009, an arbitration hearing was held on due notice before Arbitrator Eugene T. Coughlin. However, Defendant failed to appear for the arbitration. *Id.,* ¶ 8. On July 7, 2009, the Arbitrator rendered his decision and held that Defendant failed to make appropriate contributions to the Funds. Consequently, the arbitrator directed the Defendant to remit to the Funds the sum of $174,507.88, which includes $134,867.20 for contributions, plus interest in the amount of $7,876.24; liquidated damages in the amount of $26,964.44; attorneys' fees in the amount of $2,800; and arbitration fees in the amount of $2,000. *Id.,* ¶ 9 and Ex. A.

On July 15, 2009, Plaintiffs' counsel demanded that Defendant comply with the terms of the Arbitration Award, which to date, Defendant has failed to do. *Id.,* ¶10. Thus, this action was filed on September 2, 2009 seeking confirmation of the Arbitration Award, including the total sum of $174,507.88. *See* DE 1. The Summons and Petition was served on Defendant through the New York Secretary of State on September 21, 2009. *See* Carney Aff. ¶ 5; DE 3. After Defendant failed to answer the Petition, Plaintiffs moved for default judgment on November 10, 2009. *See* DE 4. A Certificate of Default was entered by the Clerk of this Court on November 12, 2009 and District Judge Spatt entered a default judgment on February 18, 2010. *See* DE 7, 9.

**III. DISCUSSION**

The Second Circuit has previously held that "default judgments in confirmation/vacatur proceedings are generally inappropriate." *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 109 (2d Cir. 2006); *see also Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Unite Here! v. Jung Sun Laundry Group Corp.,* 08-CV-2771, 2009 WL 704723, at *3 (E.D.N.Y. Mar. 16, 2009) ("default judgments are generally inappropriate in proceedings to confirm an arbitration award"). Since a petition to confirm an arbitration award typically is accompanied by a record, the Second Circuit advised district courts that they should treat an unanswered petition to confirm an arbitration award "as an unopposed motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 110. Nevertheless, courts in this district have held that default judgments are appropriate in the context of a petition for confirming an arbitration award as "the distinction between moving for default judgment and moving for summary judgment is somewhat academic" when the defendant failed to contest the claims at the arbitration hearing as well. *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Unite Here!*, 2009 WL 704723, at *3; *see also Trustees of the Local 807 Labor Mgmt. Health Fund v. Express Haulage Co.,* No. 07-CV-4211, 2008 WL 4693533, at *3 (E.D.N.Y. Oct. 23, 2008) (where defendant never put forward a case in either the arbitration or judicial phases of the dispute at issue, more stringent review under summary judgment standard does not improve defendant's position); *Trustees of the Unite Here Nat'l Health Fund v. New Age Intimates, Inc.,* No. 07-CV-2892, 2008 WL 3833841, at *4 (E.D.N.Y. Aug. 14, 2008) (same).

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El*

4

*Norteno Restaurant Corp.*, No. 06 Civ. 1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.I.U.I. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05 Civ. 0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). Applying the standards set forth in *D.H. Blair* and *Jung Sun Laundry Group*, this Court finds that Plaintiffs have proffered a legitimate claim under 9 U.S.C. § 9 and 29 U.S.C. § 185(a). 9 U.S.C. § 9 provides:

> [i]f the parties in their [arbitration] agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected.

Pursuant to Article 25 of the CBA, the Defendant agreed to submit to binding arbitration in the event a dispute arose over contributions owed to the Funds. Further, 29 U.S.C. § 185(a) provides that "suits for violations of contracts between an employer and labor organization representing employees in an industry affecting commerce . . . may be brought in any district of the United States having jurisdiction of the parties." This statute has been determined to confer jurisdiction to confirm and enforce labor arbitration agreements. *See Local 802, Associated Musicians v. Parker Meridien Hotel,* 145 F.3d 85, 88 (2d Cir. 1998).

For the purposes of an inquest, however, the Court generally accepts as true all of the well-pleaded factual allegations set forth in the Complaint, except those related to damages. *See*

*Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05-CV-1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)). The only question remaining, then, is whether Plaintiffs have provided adequate support for the relief they seek. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158; *see also Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (determining that a Court must still "conduct an inquiry to ascertain the amount of damages with reasonable certainty" after an entry of default).

"The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *LaBarbera v. Les Sub-Surface Plumbing, Inc.*, No. 06-CV-3343, 2008 WL 906695, at *3 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997)). Further, when an arbitration award constitutes the basis for a party's damages claim, the Second Circuit has held:

> [C]onfirmation of an arbitration award is a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court," and the court "must grant" the award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The arbitrator's rationale for an award need not be explained, and the award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case.

*D.H. Blair & Co. v. Gottdiener,* 462 F.3d 90, 110 (2d Cir. 2005) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) and *Barbier v. Shearson Lehman Hutton, Inc.,* 948 F.2d 117, 121 (2d Cir. 1991) (internal quotations and citations omitted)). Thus, "in evaluating plaintiff's petition to confirm the result of the arbitration, the Court need only ensure that the

arbitrator had some grounds on which to grant the damages spelled out in the Award." *Trustees of the Local 807 Labor Mgmt. Health Fund,* 2008 WL 4693533, at *5.

Plaintiffs previously submitted the Affirmation for Judgment of Default by Danielle M. Carney and a Statement of Damages in support of their request for an award of damages pursuant to the arbitration award. *See* DE 5, 6. After the Court requested additional supporting materials from Plaintiffs [DE 10], the Plaintiffs submitted the following additional documents in furtherance of their request: (1) Affidavit of Iris Dozier ("Dozier Aff."), plan administrator of the Fund, with annexed exhibits including the CBA, Assumption Agreement and the fund calculation spreadsheet of the delinquency owed by Defendant [DE 11]; (2) Supplemental Affidavit of Iris Dozier ("Dozier Supp. Aff."), correcting references to the CBA in her first affidavit [DE 15]; and (3) Affirmation of Attorneys' fees and costs by Danielle M. Carney ("Carney Aff."), associate with the firm Barnes, Iaccarino, & Shepherd, LLP, with annexed exhibits including the firm's time log, bills submitted in connection with the costs for the action and a copy of the arbitrator's award [DE 12]. The Court finds that Plaintiffs' submissions provide sufficient evidence to form the basis for an award of damages. The following discussion assesses the amount of damages to which Plaintiffs are entitled based upon the arbitrator's award and the information set forth in Plaintiffs' submissions as evaluated by the Court.

**A.  Unpaid Fringe Benefit Contributions**

Plaintiffs seek to recover unpaid contributions due to the Funds pursuant to the CBA on behalf of covered employees from May 1, 2008 through June 1, 2009 in the principal amount of $134, 867.20. *See* Dozier Aff. ¶ 4. On July 7, 2009, the arbitrator found that Defendant was delinquent in making contributions to the Fund and found that Defendant did not make the

required contribution for the period May 1, 2008 through June 1, 2009, resulting in $134,867.28 in contributions owed and delinquent. See Carney Aff., Ex. C.

Pursuant to Article 25, Subsections (A) and (C) of the CBA, the Defendant agreed to make contributions to the Funds for each employee covered by the CBA and agreed to cooperate in the performance of any audits of the Defendant's payroll and employee wage records. *See* Dozier Aff., Ex. A. As Defendant failed to provide the Funds with any remittance reports, the contributions owed were calculated pursuant to the union records of the employees working for Defendant. *See* Dozier Aff. ¶ 3. The calculation of contributions owed by the Defendant was based on the category of the employee (i.e. journeymen, apprentice) multiplied by the number of hours worked. *See* Dozier Aff. ¶ 3. The number of hours worked was based on a standard 40-hour work week. *See* Dozier Supp. Aff. ¶ 4 and Ex. A.[1] Thus, the Fund found Defendant delinquent with respect to the 11 employees covered by the CBA in an amount totaling $10,374.40 per month for 13 months, thus resulting in total delinquent contributions of $134,867.20. *See* Dozier Aff., Ex. C.

As an initial matter, the Court points out the manner in which the total delinquent contributions have been presented by Plaintiffs. Instead of submitting the actual union time records regarding the employees who worked for Defendant during the relevant period – information which would have confirmed actual hours worked by each employee – Plaintiffs rely

---

[1] Article 6, Section A(a) of the CBA states that:

> A regular week's work shall consist of forty (40) hour, divided into any five (5) consecutive days between Monday through Sunday inclusive, of eight (8) hours each, performed between the hours of 6:00 AM and 6:00 PM.

on Article 6 of the CBA which states that a normal work week consists of 40 hours. Likewise, the spreadsheet provided by the Funds (attached to Iris Dozier's Affidavit as Exhibit C) does little to shed any additional light. First, the per month total hours figure used by the Funds for each employee is 120 hours – an amount which only accounts for three weeks of work during the month. Additionally, the spreadsheet's breakdown for each individual fund is not clear.[2] Notwithstanding these concerns, the Court notes that an arbitrator determined the Defendant was delinquent in the sum of $134,867.20 for unpaid contributions. "Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,'" *D.H. Blair & Co., Inc.,* 462 F.3d at 110 (citing *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 176 (2d Cir. 1984)), "and the court 'must grant' the award 'unless the award is vacated, modified or corrected.'" *Id.* (citing 9 U.S.C. § 9). An arbitrator's rationale for an award does not need be explained, and the award should be upheld "if a ground for the arbitrator's decision can be inferred from the facts of the case." *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1216 (2d Cir. 1972) . "Only 'a barely colorable justification for the outcome reached' by the arbitrator is necessary to confirm the award." *D.H. Blair & Co., Inc.*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Service Emps. Int'l Union,* 954 F.2d 794, 797 (2d Cir. 1992)); *see also Trustees of the Local 807 Labor Mgmt. Health Fund,* 2008 WL 4693533, at *5. In the arbitration award itself, the arbitrator noted that "[t]he authority and scope of this decision, is restricted and guided by the language of the 'CBA,' Assumption Agreement and the evidence presented." Carney Aff., Ex. C at 3.

---

[2] The delinquency calculations only show amounts owed to the welfare fund, annuity fund and amounts for "ERF PRIVATE WORK," with which the Court is unfamiliar.

Therefore, this Court need only ensure that there were reasonable grounds on which the arbitrator granted this damages figure. Since the arbitrator heard the evidence first-hand at the arbitration hearing, the Court concludes that the spreadsheet submitted here reflects the evidence presented to the arbitrator upon which the arbitrator then arrived at the $134,867.20 figure awarded. On that basis, I respectfully recommend to Judge Spatt that damages be awarded in favor of Plaintiffs in the amount of $134,867.20 for the unpaid contributions.

### 2. Interest On Unpaid Contributions

The arbitration award also included interest on the unpaid contributions at a rate of 5.84%, totaling $7,876.24. *See* Carney Aff., Ex. C. Pursuant to Article 25, Section C(e) of the CBA, in addition to the unpaid contributions,

> the EMPLOYER shall also pay the FUNDS (a) interest on delinquent contributions calculated at the prime rate as stated in Federal Reserve Statistical Release on the date contributions are due plus two percent (2%).

Dozier Aff., Ex. A. Plaintiffs have not provided the Court with any supporting documentation of the prime rate in effect at the time the interest here was calculated. The Court notes that according to the Federal Reserve Statistical Release, from June 2008 through July 2009 the prime rate varied from 3.25% to 5.00%. *See* www.federalreserve.gov/releases/h15/data.htm. An average of those months yields a rate of 3.92%. Thus, adding an additional 2%, as provided for in the CBA (i.e., 5.92% in total), yields an interest rate comparable to the 5.84% awarded by the arbitrator. As such, this Court can infer that the arbitrator had some basis to accept the 5.84% rate used by Plaintiffs in their calculations. *See Trustees of the Local 807 Labor Mgmt. Health Fund v. Express Haulage Co.,* No. 07-CV-4211, 2008 WL 4693533, at *6 (E.D.N.Y. Oct. 23,

2008) ("Although it is unclear what formula or percentage the arbitrator used in reaching this amount, the Court can infer in this situation that the arbitrator had some basis-documentary, testimonial, or otherwise-on which to determine this amount of interest."). Accordingly, I respectfully recommend to Judge Spatt that interest on the unpaid contributions be awarded to Plaintiffs in the amount of $7,876.24.

### C. Liquidated Damages

Arbitrator Coughlin awarded Plaintiffs liquidated damages in the amount of $26,963.44. *See* Carney Aff., Ex. C. Pursuant to Article 25, Section C(e) of the CBA, the Defendant also had to pay "liquidated damages equal to 20% of the delinquent contributions." Dozier Aff., Ex. A. However, 20% of delinquent contributions totaling $134,867.20 yields the sum of $26,973.44, which is precisely $9.00 more than the amount awarded by the arbitrator. A court may modify an arbitration award if "there was an evident material miscalculation of figures." 9 U.S.C. § 11(a); *see also New York City Dist. Council of Carpenters Pension Fund v. Brookside Contracting Co.*, No 07 Civ. 2583, 2007 WL 3407065, at *2 (S.D.N.Y. Nov. 14, 2007) (concluding that an arbitration award may be modified if miscalculation is clear on the face of the award). Thus, I respectfully recommend to Judge Spatt that the $9.00 adjustment be made and that liquidated damages of $26,973.44 be awarded to Plaintiffs.

### D. Attorneys' Fees and Costs

Plaintiffs also seek to recover attorneys' fees in the amount of $2,840,[3] costs totaling $530 and the arbitrator's fee of $2,000. Pursuant to Article 25, Section C(e) of the CBA, the Defendant was liable for "all costs of collecting the payments due, including without limitation,

---

[3] In the Arbitration award, $2,800 was awarded for attorneys' fees. *See* Carney Aff. Ex. C.

attorneys' fees and disbursements." Dozier Aff., Ex. . Moreover, an award of attorneys' fees is proper when a party, without justification, fails to abide by an arbitration award. *See First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Emps.,* 118 F.3d 892, 898 (2d Cir. 1997) (citing *International Chemical Workers Union, Local 227 v. BASF Wyandotte Corp.,* 774 F.2d 43, 47 (2d Cir. 1985)).

### 1. *Attorneys' Fees*

Courts within the Second Circuit determine an appropriate award of attorneys' fees according to the standard of a "presumptively reasonable fee."[4] *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183, 189 (2d Cir. 2007). This number should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184.

The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Finkel v. Omega Comm'n Services, Inc.*, 543 F.

---

[4] The Second Circuit has recommended abandoning the term "lodestar" as its meaning "has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill*, 522 F.3d at 190.

Supp. 2d 156, 164 (E.D.N.Y. 2008) (citations omitted). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Id.* (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule which states that district courts should generally use the prevailing hourly rates in the district where it sits. *See Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing [market rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). In order to apply out-of-district rates, a party must overcome a presumption in favor of the forum rule. *See Simmons v. New York City Transit Auth.,* 575 F.3d 170, 172 (2d Cir. 2009); *Arbor Hill*, 522 F.3d at 191. To overcome the presumption, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons,* 575 F.3d at 172. The Court must also, "in exercising its considerable discretion," consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)[5] and remain mindful that "a

---

[5] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in

13

reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

In 2007, the Eastern District observed that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants." *Cho v. Koam Medical Services PC,* 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007). (awarding fees in FLSA and New York Labor Law case based on $250 hourly rate for partner, $150 hourly rate for associate, and $75 hourly rate for legal assistant). It appears that these figures, with minimal changes, remain in effect. *See Said v. SBS Elecs, Inc.*, No. CV 08-3067, 2010 WL 1265186, at *10 (E.D.N.Y. Feb. 24, 2010) (holding that "hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $100 to $150 for junior associates, and $70 to $80 for legal assistants.").

To determine whether the number of hours spent by Plaintiffs' counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation. . . ." *Cho*, 524 F. Supp. 2d at 209 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney

---

similar cases." *Johnson*, 488 F.2d at 717-19.

and legal assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524 F. Supp. 2d at 209 (internal citations, quotation marks, and alteration omitted).

Counsel for Plaintiffs billed $200 per hour for the services rendered by Danielle Carney and a fellow associate. *See* Carney Aff. ¶ 6. Plaintiffs' counsel argues that this rate is equal or less than the usual fee charged by attorneys in the Eastern District. *Id.* ¶ 8. Plaintiffs' counsel also provided the Court its time log that captures all time billed to this matter from March 11, 2009 through September 16, 2009, which totaled 14.2 hours. *See* Carney Aff. ¶ 6 and Ex. A. The time log describes what services were rendered on behalf of Plaintiffs in connection with the case, the length of time and the dates such services took place. *Id.*

This Court agrees that a rate of $200 for an associate is in line with the rates awarded by this District in similar cases. Likewise, after a review of the log submitted by Plaintiffs' counsel, the Court does not identify any unreasonable, excessive or unnecessary time that should be excluded. *See Martone v. HST Roofing, Inc.,* No. 03-CV-4165, 2007 WL 595054, at *3 (E.D.N.Y. Feb. 22, 2007) (finding 20 hours of billable time spent on an ERISA default to be reasonable); *La Barbera v. David Liepper & Sons, Inc.* No. CV 06-371, 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (finding 17.17 hours reasonable). Accordingly, the Court finds that all 14.2 hours expended by Plaintiffs' counsel are properly included in calculating attorneys' fees here. As such, I respectfully recommend to Judge Spatt that Plaintiffs be awarded attorneys' fees in the amount of $2,840.

### 2. Costs (including Arbitrator's Fee)

Finally, Plaintiffs seek costs and disbursements in the amount of $530 and reimbursement of the arbitrator's fee of $2,000. *See* Carney Aff. ¶¶ 7, 9 and Ex. C. Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reidman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987). The costs incurred by Plaintiffs include process service and filing fees. *See* Carney Aff. ¶ 7 and Ex. B. These expenses serve as a proper basis for reimbursement. Further, Courts in this District have awarded arbitrator's fees as well. *See Trustees of the Nat'l Org. of Indus. Trade Union Ins. Trust Fund v. Davis Grande Co.,* No. 03-CV-6229, 2006 WL 1652642, at *4 (E.D.N.Y. June 9, 2006) (awarding petitioner arbitrator's fees which was included in the arbitrator's award); *Trustees of the Unite Here Nat'l Health Fund,* 2008 WL 3833841, at *7 (finding that courts in this district have awarded arbitrator's fees when liability for such fees is specified in a CBA). Here, the arbitrator's fee of $2,000 was included in the arbitration award. Moreover, Article 25 of the CBA allows recovery of all costs involved with collecting the payments due. Accordingly, I respectfully recommend to Judge Spatt that Plaintiffs be awarded costs in the amount of $2,530.

## IV. CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Spatt that Plaintiffs be awarded damages in the amount of $175,086.88, broken down as follows:

- $134,867.20 for unpaid contributions;
- $7,876.24 in interest;
- $26,973.44 in liquidated damages;

- $2,840.00 in attorneys' fees.; and

- $2,530.00 in arbitrator's fees, court costs and disbursements.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service. Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 6(a),(e), 72. All objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Arthur D. Spatt. Any request for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Plaintiffs' counsel is directed to serve a copy of this Report & Recommendation upon Defendant by overnight mail and first-class mail and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
November 17, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge